United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTALEE ABREU, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

SLIDE, INC., a Delaware corporation, and GOOGLE INC., a Delaware corporation,

    Defendants.

No. C 12-00412 WHA

**ORDER DENYING MOTION TO REMAND AND VACATING HEARING**

## INTRODUCTION

Plaintiff moves to remand this putative class action to Santa Clara County Superior Court. Because this order finds defendants have successfully shown the amount in controversy exceeds five million dollars, plaintiff's motion is **DENIED.**

## STATEMENT

This putative class action concerns virtual pets and real money. Defendant Slide, Inc. created an internet-based video game entitled *SuperPoke! Pets* (SPP), which defendant Google, Inc. later acquired. SPP provided a platform for users to adopt and care for virtual pets. Users created virtual pets with free basic access to the SPP application, and were then able to name,

interact with and clothe their virtual pets as well as customize the pets' virtual habitats. Users could also obtain virtual goods for their pets and pet habitats with virtual coins earned through play. Virtual goods could then be displayed within the pet habitats.

A premium form of virtual currency, aptly called "gold," allowed users to obtain premium virtual goods. "Gold" could not be earned by play, however, but was purchased by users via their debit, credit or PayPal accounts. Virtual goods could also be transferred between SPP users and a "robust secondary market" to buy and sell "used" virtual items developed. The online exchange of virtual goods was facilitated by SPP through seller registration. Beginning in 2010, SPP also offered subscription-only access to premium game content (VIP status) (Hur Decl. Exh. 1 (Compl.) ¶¶ 15–21).

According to the complaint, SPP was designed to induce users to purchase "gold" and VIP status. The vast majority of items, features and content could be obtained only with "gold." Defendants also manipulated the value of virtual goods by limiting and then "restocking" items:

> [W]hile a large quantity of 5,500 virtual hot dogs would be worth relatively little on an individual basis, a limited quantity of 10 virtual stuffed animals would be seen as rarer and, consequently, more desirable . . . and worth much more. Defendants highlighted the limited quantities of rare items to encourage sales, by stating, for example: 'Get them now, they will run out!'

Plaintiff alleges her own spending on the game, since she began playing in 2009, exceeded $1,000 (*id.* at ¶¶ 17–19, 49–50).

In June 2011, defendants announced the discontinuation of the "gold" purchasing program. Users were notified that, at the end of that month, no premium items would be available and the value of "gold" in users' accounts would disappear. No refunds were offered. Defendants assured users that support for the SPP site would continue, and promised they had "no plans to shut the site down." Defendants also informed users that no new VIP status subscriptions would be accepted after July 1, 2011, but that users with pre-dated subscriptions would enjoy continued access to the premium content area "for life" (*id.* at ¶¶ 33–38).

But in August 2011, defendants announced SPP would be terminated within six months, and that SPP users would lose online access to their virtual pets and goods. In September 2011,

1  defendants confirmed SPP would be taken offline in March 2012. The value of users' virtual
2  goods was accordingly scheduled to vanish (*id*. at ¶¶ 43–47).

3  Plaintiff filed this action in Santa Clara County Superior Court in December 2011
4  seeking to represent two classes of thousands of similarly situated individuals: "(1) All persons
5  in the United States who have one or more registered [SPP] accounts and have purchased virtual
6  gold or in-game items from SPP-certified resellers; (2) all persons in the United States who have
7  purchased one or more months of the [] Vip Status program." The complaint alleges violations
8  of California Civil Code Sections 1670.5, 1668, 1750 *et. seq*. and 17200 *et. seq*, fraud by
9  inducement and unjust enrichment. In addition to declaratory and injunctive relief, the
10 complaint seeks restitution for monies unjustly received, actual and punitive damages and
11 interest, as well as reasonable costs and attorney's fees (*id*. at ¶¶ 54–55, (b)–(I)). While no
12 specific class period is identified, the complaint seeks to recover the full value of users' in-game
13 purchases of both money and virtual goods, as well as "other investments" allegedly lost as a
14 result of the game's termination (*id*. at ¶¶ 47–48).

15 Defendants removed this action here in January 2012. In its notice of removal,
16 defendants alleged federal jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C.
17 Section 1336(d). Plaintiff now moves to remand this action on the sole ground that the CAFA
18 amount in controversy requirement has not been met.

### ANALYSIS

20 The CAFA vests district courts with "original jurisdiction of any civil action in which,
21 inter alia, the amount in controversy exceeds the sum or value of $5,000,000, exclusive of
22 interest and costs," and in which the aggregate number of proposed plaintiffs is 100 or greater,
23 and any member of the plaintiff class is a citizen of a state different from any defendant.
24 28 U.S.C. § 1332(d)(2). Plaintiff does not dispute that: (1) This is a class action as defined by
25 the CAFA; (2) this lawsuit concerns over 100 persons; and (3) there exists minimal diversity as
26 required by the CAFA (Br. 5). This order thus need only consider whether the amount
27 in controversy requirement has been met.

The amount in controversy is merely an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010). Where, as here, the complaint does not allege the amount of damages sought, the removing defendant must show that the amount in controversy exceeds five million dollars. Under this burden, the defendant must make a showing that it is "more likely than not" that the amount in controversy satisfies the federal diversity jurisdictional amount requirement. *See Abrego Abrego v. The Dow Chem. Co., et al.*, 443 F.3d 676, 683 (9th Cir. 2006). A district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider post-removal evidence to determine whether the jurisdictional requirements have been met. Our court of appeals has held that an affidavit showing the amount in dispute meets or exceeds five million dollars is sufficient to satisfy a defendant's evidentiary burden. *Lewis,* 627 F.3d at 397.

Defendants appended to their notice of removal several third-party website postings showing SPP as among the "top 25 MySpace games" for various months in 2011. MySpace is a social networking site. One of the postings states that SPP had over 7.1 million total users on MySpace (Dkt. No. 7, Exh. E). Defendants submit with their opposition a declaration of Libor Michalek, an engineering director at Google. Libor Michalek was a co-founder and chief technology officer of Slide, Inc., prior to Google's acquisition thereof. The Michalek Declaration states (Michalek Decl. ¶¶ 1–2):

> Google maintains an electronic database of recorded transactions for [SPP]. This database includes information relating to all purchases of virtual currency (called "gold") made by users of the game . . . I obtained information from this electronic database relating to the purchases of virtual currency . . . [SPP] users spent approximately $6,116,000 on purchases of "gold" from October 2010 through June 2011.

Defendants' submissions, coupled with the allegations in the complaint, plainly show the amount in controversy exceeds five million dollars. Plaintiff's complaint seeks to recover the actual value of SPP users' "investments and property" in "gold" and virtual goods as well as money spent on VIP status subscriptions. The complaint alleges users spent "hundreds or even thousands of dollars on the game" (Compl. ¶¶ 96, 108, 115, 127). Thus plaintiff has put

4

1  at issue the full amount of user spending on SPP. The Michalek declaration shows user spending
2  exceeded the jurisdictional amount on just one portion of the game ("gold" purchases), and
3  in just the nine months preceding the game's termination. According to the complaint, user
4  purchases of "gold" and premium virtual goods began well before October 2010 (*id*. at ¶¶ 21,
5  24).

6  Plaintiff faults defendants for failing to produce actual business records to show the
7  amount of damages. Defendants are not required, however, to prove plaintiff's damages
8  allegations. They need only show that the amount put at issue by plaintiff exceeds the
9  jurisdictional amount. Plaintiff argues that, "without the benefits of defendants' records
10 regarding the actual amounts spent by SPP users . . . [the Court] ha[s] no way to determine the
11 actual amount in controversy here" (Br. 7). Plaintiff, however, nowhere suggests that class
12 recovery would be *less* than five million dollars. Defendants have made a showing that it is
13 more likely than not the amount users spent on SPP "gold" — only a portion of the damages
14 sought by plaintiff's complaint — well exceeds this amount.

15 Plaintiff also contends that defendants "rely upon a mischaracterization of [p]laintiff's
16 allegations to conclude that there are at least 2000 individuals in each of the two putative
17 [c]lasses" and provides "no evidentiary proof to suggest that those figures are accurate" (Br. 1).
18 The Michalek declaration states that 9,221 users purchased "gold" in a single month. Because
19 the existence of 100 or more class members has been conceded, this order need not determine
20 the actual number of potential claimants, but rather whether the jurisdictional amount has been
21 sufficiently shown. It has.

22 In her reply, plaintiff argues that the Michalek declaration addresses only what user's
23 spent on "gold" and does not take into account the total amount of "refunds, chargebacks and
24 any other value returned to class members" to determine the amount of money actually retained
25 by defendants. But no allegation was made that refunds were ever issued to users. Plaintiff now
26 states that "it was not until July 2011 that defendants *ceased* offering cash refunds to SPP users
27 for purchases of virtual gold" (emphasis added), and that "common sense dictates that prior
28 to that time . . . SPP users requested and received refunds for such purposes." The complaint,

5

however, alleges only that "defendants *did not offer* to refund the cash value of gold that was not spent through SPP prior to [July 2011]," not that refunds suddenly ceased. Defendants' refusal to offer refunds in July 2011 does not support the otherwise unsubstantiated claim that refunds were offered prior to that time. In fact, the opposite inference could be equally drawn: "Gold" was non-refundable. Plaintiff's argument thus does not controvert the showing made by defendants.

Defendants have here provided evidence that a mere portion of the alleged damages well exceeds the jurisdictional requirement. According to the complaint, recovery is also sought for VIP status subscription charges. In addition, the Court may also consider attorneys fees and punitive damages, both of which are sought and would increase the amount of potential damages shown by defendants' affidavit. Moreover, plaintiff has not stated any intention to limit recovery to less than five million dollars. *See Lewis*, 627 F.3d at 397. The complaint plainly states that plaintiff's own spending on SPP exceeded $1,000, and that thousands of persons comprise the two classes of similarly situated individuals (Compl. ¶¶ 50, 55). This order finds that defendants have met their burden of showing that the amount placed into dispute by plaintiff's complaint exceeds five million dollars.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to remand this action to Santa Clara County Superior Court is **DENIED.** The hearing scheduled for April 5, 2012, is **VACATED.**

**IT IS SO ORDERED.**

Dated: April 3, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE