IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHRISTALEE ABREU, individually and
on behalf of others similarly situated,

    Plaintiff,

  v.

SLIDE, INC., a Delaware corporation, and
GOOGLE, INC., a Delaware corporation,

    Defendants.

No. C 12-00412 WHA

**ORDER GRANTING
DEFENDANTS' MOTION
TO COMPEL ARBITRATION
AND REQUEST FOR
JUDICIAL NOTICE**

**INTRODUCTION**

In this proposed class action dispute, defendants move to compel arbitration, or in the alternative, dismiss plaintiff's claims pursuant to FRCP 12(b)(6). For the following reasons defendants' motion to compel arbitration is **GRANTED**, and defendants' request for judicial notice is also **GRANTED**. Because this order grants defendants' motion to compel arbitration, it declines to consider defendants' motion to dismiss.

**STATEMENT**

Defendant Slide is the developer of SuperPoke! Pets (SPP), an online game launched around April 2008 that provided a platform for users to adopt, care for and interact with virtual pets (First Amd. Compl. ¶¶ 5, 9, 12). Basic access to SPP was free, allowing users to create virtual pets and earn "coins" by performing tasks and attaining "achievements" in the game (*id* ¶¶ 16–17). Users could spend their coins to purchase virtual items in order to customize

1  a pet's environment (*ibid*.). Users could also use their credit or debit cards or PayPal accounts
2  to purchase a different form of virtual currency called "gold" (*ibid*.). Only gold could be
3  used to purchase "premium" SPP items (*ibid*.). Finally, users could purchase "VIP Status"
4  subscriptions by paying a monthly fee to access exclusive content unavailable to basic SPP
5  users (*ibid*.).

6  In August of 2010, defendant Google, Inc. acquired Slide (*id*. ¶ 15). In June 2011,
7  defendants made several important announcements relating to the future of SPP and upcoming
8  changes to the game. *First*, defendants announced that SPP users would no longer be able
9  to purchase gold using cash, and that there would no longer be new gold items released for
10 purchase (*id*. ¶ 35). Users were instructed to spend any outstanding gold on existing virtual
11 items before June 30, 2011, as after that date, the value of any gold remaining in their accounts
12 would disappear and not be refunded (*id*. ¶ 37). *Second,* defendants announced that after July 1,
13 2011, SPP would no longer accept any new VIP subscriptions but "promised those who signed
14 up and paid for the program before June 30, 2011 that they would enjoy continued access to the
15 VIP Status 'indefinitely' and 'for FREE'" (*id*. ¶ 40). *Third*, defendants explained that the reason
16 behind these changes was because "SPP had become a mature product, capable of standing on
17 its own" and reassured users that they had no plans to turn off SPP in July 2011 or "in the near
18 future" (*id*. ¶¶ 38–39).

19 Plaintiff claims that defendants' announcements had the "calculated impact of increasing
20 the value and demand for both the VIP status and existing in-game items," and that as a result,
21 "thousands of SPP users either renewed their monthly VIP subscriptions or signed up for the
22 VIP Status program for the first time" and "purchased and stockpiled . . . numerous virtual items,
23 anticipating that such items would maintain and even increase in value after June 30, 2011" as
24 they could be sold on the secondary market to other users (*id*. ¶¶ 42–44).

25 In August 2011, defendants announced that SPP would be terminated within six months,
26 and users would lose access to their virtual pet and in-game purchases (*id*. ¶ 46). Defendants
27 advised SPP users that they could "take screenshots of their pets, habitats and other purchased
28 items" and released an "SPP Lite" application, which, "in effect, takes animated screenshots of

2

1  those same items, but will not display all items, limits the functionality of other items, and
2  otherwise prevents users from accessing their in-game purchases" (*id.* ¶ 48). Plaintiff claims
3  that these alternatives to the SPP game were inadequate because both options "entirely strip[ped]
4  the value from consumers' original purchases," rendering their virtual items "effectively
5  valueless" as users could no longer interact with each other on the secondary market or play
6  with their virtual pets (*id.* ¶¶ 48–50). Characterizing purchased virtual items as "property",
7  plaintiff claims that as a result of defendants' actions, she and other class members lost access
8  to goods that cost "hundreds or even thousands of dollars" (*id.* ¶ 49).

9  On May 15, 2012, plaintiff commenced this action against defendants, alleging that
10 defendants' sudden termination of SPP, and the resulting "elimination of users' money, goods
11 and property without consideration" violated several consumer statutes and California common
12 law (Reply Br. 4). On June 1, 2012, defendants filed a motion to compel arbitration, or in the
13 alternative, to dismiss under Rule 12(b)(6) (Dkt. No. 47).

**ANALYSIS**

**1.    MOTION TO COMPEL ARBITRATION.**

**A.    Legal Standard.**

17 Defendants' motion to compel arbitration is governed by the Federal Arbitration Act (the
18 Act). The Act's "overarching purpose is to ensure the enforcement of arbitration agreements
19 according to their terms so as to facilitate informal, streamlined proceedings." *AT&T Mobility v.*
20 *Concepcion,* 131 S. Ct. 1740, 1743 (2011). "Agreements to arbitrate that fall within the scope
21 and coverage of the Federal Arbitration Act . . . must be enforced in state and federal courts."
22 *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24 (2011).

23 A district court's role under the Act is limited to determining (1) whether a valid
24 agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute
25 at issue. *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).
26 If the district court determines that a valid arbitration agreement encompasses the dispute, then
27 the Act's establishment of a "liberal federal policy favoring arbitration" requires that the court
28 "*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement

3

has been signed." *Concepcion,* 131 S. Ct. at 1745; *KPMG,* 132 S. Ct. at 26. "[C]ourts must treat the arbitration clause as severable from the contract in which it appears, and thus apply the clause to all disputes within its scope, unless the validity challenge is to the arbitration clause itself . . ." *Granite Rock Co. v. International Broth. Of Teamsters*, 130 S. Ct. 2487, 2857 (2010).

"Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945 (1995)). To determine whether a valid, enforceable arbitration agreement exists, a district court must look to state law. *Lowden v. T-Mobile USA, Inc*., 512 F.3d 1213, 1217 (9th Cir. 2008) ("We apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists."). Here, both parties have briefed and argued the issues solely under California law. Accordingly, this order will take California law as controlling, just as the parties have done. *See Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1267 (9th Cir. 2006).

### B. Validity and Scope of the Arbitration Agreement.

"Challenges to the validity of arbitration agreements . . . can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced) or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (citations omitted). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 445–46; *see also Nagrampa*, 469 F.3d at 1277. ("[I]f, after examining the crux of the complaint, the district court concludes that the challenge is not to the arbitration clause itself but, rather, to the validity of the entire contract, then the issue of the contract's validity should be considered by the arbitrator . . ."). SPP's arbitration provision is contained within a bolded section of the TOU labeled "Binding Arbitration" (Michalek Decl. Exh. 1, 9). The arbitration provision reads:

> **4. Binding Arbitration.** If you and the Company are unable to resolve a Dispute through informal negotiations, either you or the

4

> Company may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL. The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, the Company will pay all arbitration fees and expenses. The arbitration may be conducted in person, through submission of documents, by phone or online. The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Except as otherwise provided in this Agreement, you and the Company may litigate in court to compel arbitration, stay proceedings pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

(Michalek Decl. Exh. 1, 9–10).

Examining the crux of the complaint in the instant action, plaintiff's essential challenge is not to the arbitration provision itself but to other terms contained within the TOU. Plaintiff's complaint asserts seven causes of action: (1) invalidity of the TOU for its unconscionable exculpatory clauses; (2) invalidity of the TOU for lack of mutuality and illusoriness; (3) violation of the Consumer Legal Remedies Act (CLRA); (4) violation of California's Unfair Competition Law (UCL); (5) fraud and inducement; (6) promissory estoppel and (7) unjust enrichment.

Plaintiff's second through seventh causes of action do not make any challenge to the arbitration provision of the TOU. Instead, plaintiff supports these causes of action by challenging portions of the TOU outside the arbitration provision and by asserting claims about defendants' purportedly wrongful conduct in the months preceding their decision to terminate the SPP game (*id.* ¶¶ 65–93). For instance, plaintiff challenges the TOU's ninety-day limit on recovery of monetary damages and the shortened, one-year statute of limitations clause, neither

of which are part of the arbitration provision (*see id.* ¶¶ 73–75). The validity of the non-arbitration clauses of the TOU are for the arbitrator. This Court is limited to assessing the validity of the arbitration clause based on terms actually contained therein and not based on terms located in other sections of the TOU. *See Buckeye*, 546 U.S. at 445–46. Therefore, plaintiff's second through seventh causes of action are for the arbitrator.

### C. Unconscionability of the Arbitration Agreement.

Plaintiff's first claim for relief, which seeks declaratory relief invalidating the TOU for its "unconscionable exculpatory clauses," is the only section of the complaint where plaintiff attempts to directly challenge the validity of the arbitration agreement (*id.* ¶ 76(a)–(d)).

To be deemed unenforceable under California law, an arbitration agreement must be both *procedurally* and *substantively* unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000); *see also Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (applying California law). The California Supreme Court has explained that the inquiry into procedural validity focuses on "oppression or surprise due to unequal bargaining power" while the substantive inquiry focuses on "overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114; *see also Ting*, 319 F.3d at 1148. To be substantively unconscionable, a term must be "so one-sided as to 'shock the conscience.'" *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005). The validity of an agreement is judged on a "sliding scale" whereby "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice-versa." *Armendariz,* 24 Cal. 4th at 114.

Plaintiff's challenge to the arbitration agreement on the basis of unconscionability includes four discrete objections, each of which will be addressed in turn below.

#### *(1) Waiver of Injunctive Relief.*

*First,* plaintiff claims that the arbitration provision is unconscionable because it "[a]llows [d]efendants to bring any claim for injunctive relief in state or federal court, but requires that consumers irrevocably waive all rights to seek injunctive or equitable relief" (First Amd. Compl. ¶ 76(a)). At the hearing, parties disagreed about whether the TOU's waiver of injunctive relief

6

should be considered as part of the arbitration provision or outside of the arbitration provision. Regardless of this disagreement, the one-way waiver of injunctive relief clause is severable enough from the arbitration provision to allow for arbitration of all other issues. This order will compel arbitration and hold in abeyance the injunctive aspect of the case until the arbitrator has decided on the outcome of all other issues.

### *(2)     Required Filing Fee.*

*Second,* plaintiff claims that the arbitration provision is unconscionable because it "uses the commercial arbitration rules of the American Arbitration Association (AAA), which under R-4(a)(ii) of their rules, [p]laintiff would be required to pay a $775 filing fee" (*id*. ¶ 76(b)). Plaintiff's objection to this provision relates to the burdensome nature of the supposed $775 arbitration filing fee. However, there are two readily apparent problems with plaintiff's objection. First, plaintiff misstates the true filing fee, which is actually $125.00 for consumers such as plaintiff, whose claims involve amounts less than $10,000 (Walton-Hadlock Decl. Exh. A, 9). Even for consumers whose claims involve amounts up to $75,000, the filing fee cannot exceed $375.00 (*ibid*.). Only businesses are required to pay a $775 filing fee under AAA rules, and plaintiff is a consumer, not a business (*ibid*.). Additionally, filing fees are refunded if not used (*ibid*.). In her responsive brief, plaintiff admits her mistake regarding the filing fee amount but maintains that the $125.00 fee is still "excessive" (Reply Br. 7). However, plaintiff disregards the clear text of the arbitration provision, which states that "if such costs are determined by the arbitrator to be excessive, the Company will pay all arbitration fees and expenses" (Michalek Decl. Exh. 1, 10). Plaintiff's disregard for the unambiguous text of the arbitration agreement she purports to challenge for its unconscionability presents an additional problem with her objection.

Morever, plaintiff fails to show how the AAA filing fee is unconscionable under California's two-prong test, and relies instead on a conclusory statement that the arbitration provision is unconscionable merely because plaintiff must pay a filing fee (*see* First Amd. Compl. ¶¶ 76(b), 77(a)). A $125.00 filing fee used to cover arbitration costs that is waived when plaintiff cannot pay can hardly be considered "overly harsh." *See Armendariz*, 24 Cal. 4th at

7

1    114. Nor is the filing fee "so one-sided as to shock the conscience" when defendants must pay a
2    much larger filing fee themselves *and* cover plaintiff's filing fee if the neutral arbitrator finds it
3    to be excessively burdensome on plaintiff. *See Morris*, 128 Cal. App. 4th at 1322. A court must
4    find a contract term both substantively and procedurally unconscionable to render an arbitration
5    provision invalid. *See Armendariz*, 24 Cal. 4th at 99; *see also Ting*, 319 F.3d at 1148. Because
6    the AAA filing fee is not substantively unconscionable, it is unnecessary for this order to reach
7    a decision on the fee's procedural conscionability. The arbitration provision cannot be declared
8    invalid based on the requirement that both parties pay the AAA arbitration fees because those
9    fees are not unconscionable. Plaintiff cites no authority to the contrary.

### *(3)* *Inability to Recover Attorney's Costs and Fees.*

*Third,* plaintiff claims that the arbitration provision is unconscionable because it "[p]rovides no opportunity for consumers to recover costs or attorney's fees even if their arbitrations are successful" (*id*. ¶ 76(c)). However, it is apparent from simply reading the text of the arbitration provision that no waiver of costs or attorney's fees is located therein (*see* Michalek Decl. Ex. 1, 9). Moreover, there is no requirement in the law, and plaintiff cites none, that requires such a provision in order to make an arbitration agreement valid. The absence of a provision in the arbitration agreement guaranteeing a prevailing plaintiff's ability to recover attorney's fees and costs does not render the arbitration agreement substantively unconscionable, and therefore it does not render the agreement invalid.

### *(4)* *Informal Negotiations Requirement.*

*Finally*, plaintiff claims that the arbitration provision is unconscionable because consumers are required "to initiate and engage in 'informal negotiations' with [d]efendants for 'at least (30) days before initiating any arbitration or court proceeding,' thereby delaying consumers' ability to seek redress . . ." (First Amd. Compl. ¶ 76(d)). While this term is not included in the arbitration provision of the TOU, it is so closely connected to the provision that this order will consider it when assessing the arbitration provision's conscionability (*see* Michalek Decl. Exh. 1, 9). It is not unconscionable to require a thirty day negotiation period prior to the initiation of arbitration proceedings. Plaintiff cites no authority to the

8

contrary. The informal negotiations requirement does not render the arbitration agreement substantively unconscionable, and therefore it does not render the agreement invalid.

### 2. MOTION TO DISMISS.

Because this order grants defendants' motion to compel arbitration, this Court declines to consider defendants' motion to dismiss. This Court has found the agreement to arbitrate valid and enforceable, therefore all of plaintiff's claims about the legality of the TOU that are unrelated to the validity of the arbitration provision must be "considered by an arbitrator in the first instance." *Buckeye*, 546 U.S. 440, 445–46.

### 3. REQUEST FOR JUDICIAL NOTICE.

Defendants have requested judicial notice be taken of the American Arbitration Association's "Consumer-Related Disputes Supplementary Procedures" and "Supplementary Procedures for Consumer-Related Disputes Questions and Answers" retrieved from the American Arbitration Association's website. Pursuant to Federal Rule of Evidence 201(b), defendants' request is **GRANTED**.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration and request for judicial notice are **GRANTED**. The parties are **ORDERED** to proceed immediately to arbitration of this action. This order **STAYS** all claims for injunctive relief in advance of arbitration. In addition to arbitrating the damage claims, the arbitrator is free and indeed required to submit for the Court's consideration the reserved question regarding injunctive relief.

**IT IS SO ORDERED.**

Dated: July 12, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE